**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

**FILED**

JUL 14 2010

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| JAMES DEMITRI DAVENPORT,<br><br>Petitioner - Appellant,<br><br>v.<br><br>BRIAN BELLEQUE, Superintendent,<br><br>Respondent - Appellee. | No. 09-35219<br><br>D.C. No. 6:07-cv-00095-AA<br><br>MEMORANDUM[*] |

Appeal from the United States District Court
for the District of Oregon
Ann L. Aiken, Chief District Judge, Presiding

Argued and Submitted June 9, 2010
Portland, Oregon

Before: HALL, THOMPSON, and McKEOWN, Circuit Judges.

James Dimitri Davenport ("Davenport") timely appeals the denial of a

habeas corpus petition challenging his state court conviction for the intentional

murder of Larry Volk. Pursuant to an agreement with the prosecution, Davenport

pled guilty to the murder charge, a second charge for intentional attempted murder

---

[*] This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

of James Johnson was dismissed, and Davenport received a stipulated determinate sentence of 25 years in state prison, to be followed by life-time supervised release. Davenport waived his right to a direct appeal, choosing instead to allege four instances of ineffective assistance of counsel in a state post-conviction relief ("PCR") petition. Davenport's sole contention on appeal is that the district court erred in rejecting one of those exhausted claims on its merits: that his trial attorney failed adequately to investigate and advise him about possible defenses of extreme emotional disturbance and justifiable self-defense.

The district court had jurisdiction pursuant to 28 U.S.C. § 2254. We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 2253. We affirm.

## I.

The parties are familiar with the factual and procedural history of this case, we will not recount it here except as necessary to explain our decision.

## II.

We review de novo the denial of a federal habeas petition. *Insyxiengmay v. Morgan*, 403 F.3d 657, 664 (9th Cir. 2005). Davenport carries the burden of proving by a preponderance of the evidence that he is entitled to habeas relief. *Silva v. Woodford*, 279 F.3d 825, 835 (9th Cir.), *cert. denied*, 537 U.S. 942 (2002).

As relevant here, under the Antiterrorism and Effective Death Penalty Act of

-2-

1996 ("AEDPA"), federal habeas relief is available if the state court's adjudication of the merits of the habeas claim "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1).

## III.

The Supreme Court has held that *Strickland v. Washington*, 466 U.S. 668 (1984), is the "clearly established" federal law governing habeas claims of ineffectiveness of counsel under AEDPA. *Williams v. Taylor*, 529 U.S. 362, 391 (2000). Under *Strickland*, to establish ineffective assistance under the Sixth Amendment, a petitioner must demonstrate that counsel's performance "fell below an objective standard of reasonableness … under prevailing professional norms" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

In assessing the reasonableness of counsel's performance, the court must judge "counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. The inquiry under *Strickland* is highly deferential: "'[E]very effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.'" *Bell*

*v. Cone*, 535 U.S. 685, 698 (2002) (quoting *Strickland*, 466 U.S. at 689).  In order to satisfy *Strickland*'s prejudice prong in the context of the plea bargaining process, the petitioner must show "that there is a reasonable probability that, but for counsel's errors," he would not have pled guilty, but would have instead insisted on going to trial.  *See Hill v. Lockhart*, 474 U.S. 52, 58-59 (1985).

We have carefully reviewed the evidence in the PCR record, and conclude that the district court did not err in denying habeas relief on Davenport's ineffective assistance claim based on its conclusion that the PCR court's decision was neither contrary to nor an unreasonable application of *Strickland.*

**A.**

In denying Davenport's claim of ineffective assistance of counsel, the PCR court specifically found that Davenport had not produced any evidence supporting his claim that he "acted in justifiable self-defense when he shot Larry Volk in the back of the head" as he and Volk were riding in a truck driven by Johnson on a trip to a remote area of Linn County where Davenport had agreed help the two men purchase methamphetamine.  The PCR court further found that Davenport did not produce any evidence tending to show that he was suffering from extreme emotional disturbance when he shot Volk.  At most, the PCR court found, the evidence showed that Davenport was angry at Johnson for allegedly sexually

-4-

assaulting his girlfriend, but that he was "in command of his senses and reasoning ability at the time of the shooting and thereafter," and was not "so upset that he reasonably was unable to control himself when he shot Larry Volk."

The district court concluded that the PCR court's factual findings were supported by the record, and Davenport does not directly contend that the PCR court unreasonably determined the facts. *See* 28 U.S.C. § 2254(d)(2). Thus, the PCR court's findings are entitled to a presumption of correctness, which may be overcome only by clear and convincing proof that they were in error. 28 U.S.C. § 2254(e)(1); *see also Taylor v. Maddox*, 366 F.3d 992, 1000 (9th Cir. 2004). Davenport has not provided such proof. To the contrary, the PCR court's findings are supported by the evidence discussed in the PCR court's order and bolstered by additional evidence not specifically cited by the PCR court.

In addition to the specific factual findings made by the PCR court, the record establishes that Davenport met with his trial counsel, Gerald Peterson, "probably more than 20 times," and it is clear that they discussed his theory of self-defense, and his belief that Volk was reaching for a gun under the seat when he precipitously shot Volk. But Peterson also pointed out several problems with such a defense, including the fact that Davenport shot Volk in the back of the head. Davenport's own testimony in the PCR court proceedings strongly suggests such a

defense was ruled out because it could have been presented only if he had taken the stand in his own defense, which would have subjected him to effective impeachment with his prior convictions for arson, thefts, and assaults. In addition, Davenport admitted that Peterson expressed concern that the state might re-indict him for aggravated murder, with the possibility of a death sentence, if he did not agree to the plea bargain.

As to an affirmative defense of extreme emotional disturbance, Davenport admitted that he and Peterson discussed his belief that Johnson had sexually assaulted his girlfriend, his upset at seeing her bruises, and his angry response when Johnson and Volk laughed at him when he confronted Johnson during the drive. Davenport also admitted that Peterson arranged for him to be evaluated by two mental health professionals while he was being held in county jail, and that he believed the two experts reported their findings to Peterson.

As the PCR court specifically found, Davenport may have been upset and angry at Johnson at the time of the shooting, and thereafter, but he was nevertheless in command of his senses and reasoning ability, and was able to control his actions and take purposeful steps to accomplish his immediate objectives. In support of this finding, the PCR cited evidence of: Davenport's voluntary decision to accompany Johnson and Volk on the trip to eastern Linn

County to purchase illegal drugs, which was the "number one priority" that day; his decision to wait until they reached a remote area before confronting Johnson, and later shooting Volk; his struggle with Johnson to retain possession of his gun; his successful effort to commandeer Johnson's truck; and his subsequent decision to abandon the truck and set out on foot to find a nearby family reunion, which he attended and then asked for a ride home.  Moreover, Davenport's own recounting of his state of mind and conduct during and after the shooting strongly suggests that he was not suffering any "extreme emotional disturbance" when he shot Volk.

On this record, it appears that Peterson adequately investigated and discussed with his client possible defenses of justifiable self-defense and extreme emotional disturbance, but ultimately made a reasonable, informed strategic decision that it would not be advisable to pursue those defenses.  Accordingly, Peterson negotiated a plea agreement which resulted in the dismissal of the attempted murder charge and a determinate 25-year prison sentence—rather than an indeterminate life sentence or even a death sentence.   The PCR court's findings regarding available defenses were well supported by evidence in the record, and its decision that Peterson's representation was not constitutionally deficient was neither contrary to nor based on an unreasonable application of the first prong of the *Strickland* test.  Thus, the district court did not err in deferring to the state

court's findings on these issues, and concluding that "counsel's advice to enter a guilty plea [fell] well within the wide range of reasonable professional assistance."

**B.**

Even if trial counsel failed to adequately advise him about justifiable self-defense and extreme emotional disturbance, however, Davenport's evidence does not satisfy the prejudice prong of *Strickland*. *See* 466 U.S. at 694. Based on the record of the PCR court proceedings, there is no reason to believe those defenses would have been successful or that, had he gone to trial, he would have been able to avoid a serious risk of suffering two convictions, resulting in an indeterminate life sentence, and potentially even a death sentence. *Id.*

Davenport also failed to show that but for counsel's inadequate advice, he would not have pled guilty, and would have insisted on going to trial, as required by *Hill*, 474 U.S. at 59. Contrary to his argument on appeal, Davenport never clearly testified that had he been adequately advised regarding self-defense and extreme emotional disturbance, he would not have pled guilty. In fact, his deposition testimony suggests nothing more than that he now regrets pleading guilty: "[I]f I would have took it to trial, I mean, there's a chance I could have came out with more time or there's a chance I could have got it dropped." In these circumstances, Davenport has failed to establish that he suffered any prejudice

from the alleged deficiencies in the representation he received from his trial counsel, and the district court did not err in denying his claim for habeas relief.

## IV.

For the foregoing reasons, the order of the district court denying Davenport's habeas petition is AFFIRMED.